411 F.3d 306
 Sharon BURKYBILE, Plaintiff-Appellant,
v.
BOARD OF EDUCATION OF THE HASTINGS-ON-HUDSON UNION FREE SCHOOL DISTRICT and John J. Russell, Individually and in his Official Capacity as Superintendent of the Hastings-on-Hudson Union Free School District, Defendants-Appellees.
No. 04-0905-CV.
 United States Court of Appeals, Second Circuit.
 Argued: November 8, 2004.
 Decided: June 15, 2005.
 
 Robert F. Hellmann, Terre Haute, IN, for Plaintiff-Appellant.
 Joan M. Gilbride, Kaufman Borgeest & Ryan, LLP, Valhalla, NY, for Defendants-Appellees.
 Before: WALKER, Chief Judge, and POOLER and WESLEY, Circuit Judges.
 
 
 1
 POOLER, Circuit J.
 
 
 2
 The facts in this case are largely uncontested. However, where facts are contested, we accept the plaintiff's account because this is an appeal from a grant of summary judgment.
 
 
 3
 Dr. Sharon Burkybile appeals from the January 5, 2004 order of the United States District Court for the Southern District of New York (Charles L. Brieant, J.) granting summary judgment to defendants-appellees Board of Education ("Board") of the Hastings-on-Hudson Union Free School District ("District") and John Russell, Superintendent of the District. The district court held that Burkybile's suit, brought under 42 U.S.C. § 1983,[1] was precluded by an earlier hearing conducted pursuant to Section 3020-a of the New York Education Law and dismissal of her petition for review of that hearing in New York Supreme Court under Section 7511 of the New York Civil Practice Law and Rules. Burkybile contends that the Section 3020-a hearing was a labor arbitration, and should not have any preclusive effect under the rule of McDonald v. City of West Branch, 466 U.S. 284, 292, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). We hold that the Section 3020-a hearing is a quasi-judicial administrative action whose findings are entitled to preclusive effect under University of Tennessee v. Elliott, 478 U.S. 788, 796-99, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). We further hold that Burkybile waived any argument that her retaliation claim survived the Section 3020-a hearing, which resulted in a finding of just cause for Burkybile's termination. In any case, Burkybile failed to demonstrate a causal nexus between the exercise of her First Amendment rights and the initiation of the Section 3020-a hearing. We therefore affirm.
 
 BACKGROUND
 
 4
 Burkybile was employed by the District beginning in 1991. For the next ten years, she served variously as Records Maintenance Officer, Assistant Superintendent for Business and Personnel, Deputy Superintendent and Purchasing Agent. During her tenure, Burkybile won numerous accolades and awards from independent organizations for her performance as a school administrator.
 
 
 5
 Burkybile and her immediate supervisor, defendant-appellee Russell, had a history of conflict. In October 2000, Burkybile received a poor performance evaluation from Russell, which Burkybile later rebutted in writing and at length. On December 1, 2000, Burkybile and Russell had a dispute at an official District dinner. Burkybile later filed a police report alleging that Russell grabbed her arm and shook her while verbally abusing her. Russell responded that an argument had arisen when Burkybile unreasonably refused to assist Russell with an emergency and potential crisis, but denied touching Burkybile. Later in December, Burkybile refused to approve a purchasing order for a replacement cell phone for Russell and cancelled a business credit card, primarily in her name and secondarily in Russell's name, without notifying Russell.
 
 
 6
 On January 8, 2001, Burkybile spoke during a meeting of the defendant-appellee Board to accuse Russell of improper governmental actions. In response, the Board asked Burkybile not to attend future Board sessions and retained special counsel Ricki Roer to investigate Burkybile's accusations. Between January 8, 2001, and March 31, 2001, Burkybile conducted a vigorous campaign to support her accusations. This campaign included meeting with Roer, writing letters and providing documentation to Roer and the Board, and filing complaints with the New York State Attorney General and Comptroller.
 
 
 7
 On April 2, 2001, the Board decided to support Russell. Concerned by Burkybile's behavior and possible mental instability, the Board placed Burkybile on paid leave on the same day. Roer submitted her investigation report on April 26, essentially clearing Russell of fault and questioning Burkybile's job performance and professional judgment. On May 21, 2001, the Board ordered Burkybile to submit to medical examination pursuant to New York Education Law § 913. Three doctors chosen by the Board conducted a series of examinations of Burkybile between August 21, 2001, and February 25, 2002, and between them diagnosed narcissistic disorder, borderline personality disorder, language problems, and possible indication of a degenerative brain condition known as Pick's Disease. These findings were controverted by Burkybile's three doctors, who diagnosed a depressive episode due to stress, adjustive disorder, and possible post-traumatic stress disorder, with significant improvement in symptoms over time. Two of Burkybile's doctors and her lawyer were permitted to observe the examinations by the Board's doctors, and questioned the methodology of certain of those examinations.
 
 
 8
 The final medical report was completed on February 25, 2002. The next day, the Board found probable cause to bring a disciplinary proceeding against Burkybile based on charges brought by Russell, pursuant to Section 3020-a of the New York Education Law, which lays out extensive hearing and appeal procedures for disciplining tenured teachers and administrators in the New York state school system. Probable cause was found for additional charges on June 24, 2002. In total, Burkybile faced eight charges, covering several dozen incidents and 154 specifications. The charges included mental disability, incompetence, insubordination, neglect of duty, conduct unbecoming an administrator, and misconduct. A finding of probable cause initiates a disciplinary action under Section 3020-a. See N.Y. Educ. Law § 3020-a(2)(a). Upon receipt of the disciplinary charges, Burkybile requested a hearing under New York Education Law § 3020-a(3). Meanwhile, she filed the instant action on March 15, 2002, alleging, inter alia, infringement of her First Amendment rights in the form of retaliation by Russell and the Board for her accusations against Russell. Defendants subsequently moved for summary judgment. At Burkybile's request, the response to the motion was held in abeyance pending the outcome of the Section 3020-a hearing.
 
 
 9
 Burkybile and the Board proceeded to a Section 3020-a hearing to determine the appropriate penalty or other action. The hearing took place over fourteen days, spread out between November 7, 2002 and February 13, 2003. Five of the doctors who examined Burkybile testified, three for the Board and two for Burkybile. On July 18, 2003, the hearing officer issued a 153-page decision, finding that the Board proved all the charges brought against Burkybile, including the charge of mental disability and the vast majority of the specifications. The hearing officer found that Burkybile was unable to perform her duties, was incompetent to a degree justifying termination, and had an unreasonably vengeful attitude towards Russell. He therefore found just cause for discharge, and directed that Burkybile's employment be terminated.
 
 
 10
 Burkybile then filed a petition with the New York Supreme Court pursuant to Section 7511 of the New York Civil Practice Law and Rules. Section 7511 permits the New York Supreme Court to vacate an award for 1) corruption, fraud or misconduct; 2) partiality of the arbitrator; 3) exceeding the arbitrator's or agency's power or failing to make a final or definite award; or 4) failure to follow the procedures of Article 75. N.Y. C.P.L.R. § 7511. The petition was denied for lack of any showing that the Section 3020-a hearing officer exceeded his power and lack of any allegation of fraud or bias.
 
 
 11
 Defendants then filed a letter memorandum with the district court arguing that under the doctrine of collateral estoppel, or issue preclusion, the present Section 1983 action was now precluded. The district court endorsed the memorandum, and granted summary judgment to defendants-appellees. This appeal followed. Burkybile argues that the Section 3020-a hearing was in effect a labor arbitration, and therefore has no preclusive effect on subsequent judicial proceedings under the rule of McDonald v. City of West Branch, 466 U.S. 284, 292, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).
 
 DISCUSSION
 
 12
 This Court reviews a grant of summary judgment de novo. Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir.2001). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
 
 
 13
 I. Preclusive Effect of the Section 3020-a Hearing
 
 
 14
 Burkybile contends that the Section 3020-a hearing was the equivalent of an arbitration, and that arbitrations are not given preclusive effect. We note that the preclusive effect of arbitrations is a difficult and complex issue. Ultimately, we do not reach that issue because we disagree that the arbitration-like features of the Section 3020-a hearing negate the hearing's status as an administrative adjudication.
 
 
 15
 Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). However, neither arbitrations nor administrative adjudications are state-court judgments within the coverage of Section 1738. See University of Tenn. v. Elliott, 478 U.S. 788, 796, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986); McDonald v. City of W. Branch, 466 U.S. 284, 287-88, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). Nonetheless, in federal actions based on 42 U.S.C. § 1983, state administrative fact-finding is given the same preclusive effect as it would receive in courts of the same state. Elliott, 478 U.S. at 799, 106 S.Ct. 3220. New York courts give quasi-judicial administrative fact-finding preclusive effect where there has been a full and fair opportunity to litigate. Ryan v. New York Tel. Co., 62 N.Y.2d 494, 478 N.Y.S.2d 823, 825-27, 467 N.E.2d 487 (1984); see also, Doe v. Pfrommer, 148 F.3d 73, 79-80 (2d Cir.1998); Zanghi v. Incorporated Vill. of Old Brookville, 752 F.2d 42, 46 (2d Cir.1985).
 
 
 16
 Burkybile contends that McDonald establishes that arbitrations are not given such preclusive effect. This contention, however, overlooks significant complexity. McDonald held that a labor arbitration would not preclude a subsequent Section 1983 action based on the same facts, in accordance with a line of cases beginning with Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974).[2] McDonald, 466 U.S. at 292, 104 S.Ct. 1799. However, the McDonald line of cases has been called into question by a more recent line of Supreme Court cases that permit arbitration agreements to foreclose access to federal courts. See, e.g., Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). This holding implicitly give arbitrations preclusive effect, and is thus closely intertwined with but not identical to the preclusion issue. We have reconciled McDonald and Gilmer as to the question of access to federal courts, but not as to preclusion. See Fayer v. Town of Middlebury, 258 F.3d 117, 121-22 (2d Cir.2001); Rogers v. New York Univ., 220 F.3d 73, 75 (2d Cir.2000). In other instances, we have given arbitrations preclusive effect without reference to McDonald, Gilmer, Rogers, or any related precedents. Boguslavsky v. Kaplan, 159 F.3d 715, 720 (2d Cir.1998); Benjamin v. Traffic Executive Ass'n E. R.R., 869 F.2d 107, 114 (2d Cir.1989).
 
 
 17
 However, we need not decide here whether arbitrations have preclusive effect. Instead, we hold that because the Section 3020-a hearing was an administrative adjudication, we must give its findings preclusive effect. Burkybile points to several similarities between the Section 3020-a hearing and an arbitration: 1) the hearing officer is drawn from a list of labor arbitrators provided by the American Arbitration Association, N.Y. Educ. Law § 3020-a(3); 2) the hearing officer is paid a fee customary for an arbitrator, id. at (b)(i); 3) the hearing is reviewed under the arbitration-oriented provisions of Article 75, rather than the agency-oriented provisions of Article 78, of the New York Civil Practice Law and Rules, N.Y. Educ. Law § 3020-a(5); 4) the subject matter of the hearing covers labor disputes normally handled by arbitration and serves as a substitute for labor arbitration, N.Y. Educ. Law § 3020; and 5) the hearing officer used arbitral standards to judge the conflicting medical evidence.
 
 
 18
 On the other hand, several factors demonstrate the administrative nature of the hearing: 1) the hearing was created by statute rather than private agreement, N.Y. Educ. Law § 3020-a; 2) the hearing is a disciplinary procedure that adjudicates charges against an employee rather than rights set by a private agreement; 3) the hearing procedures were set in part by statute, id. at § 3020-a(3), and in part by the state Commissioner of Education, id. at § 3020-a(3)(c)(i); and 4) the hearing was administered and paid for by the state Department of Education, id. at § 3020-a(3)(b)(1).
 
 
 19
 We hold that these facts, taken together, establish that the Section 3020-a hearing is an administrative adjudication that must be given preclusive effect. The hearing is undoubtedly very similar in form and procedure to an arbitration. However, the important fact is not that New York has seen fit to adopt the proven procedures and methodologies of arbitration for the Section 3020-a hearing, but rather that these procedures are administered by a state agency. See Elliott, 478 U.S. at 799, 106 S.Ct. 3220 (giving preclusive effect to actions of a "state agency acting in a judicial capacity" (internal quotation marks omitted)). So long as the parties have an adequate opportunity to litigate, the precise nature of the procedures that an agency uses to reach a determination does not affect the basic policies of finality and comity recognized by Elliott. See 478 U.S. at 798-99, 106 S.Ct. 3220. In that case, the Supreme Court saw no reason to conclude that the Full Faith and Credit Act was intended to "foreclose the adaptation of traditional principles of preclusion to such subsequent developments as the burgeoning use of administrative adjudication." Id. at 797, 106 S.Ct. 3220. Similarly, we see no reason to foreclose such adaptation simply because New York has chosen to conduct that adjudication using arbitral procedures.
 
 
 20
 Accordingly, we apply the Elliott test, which states that "when a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts." Id. at 799, 106 S.Ct. 3220 (internal quotation, citation, and indication of alteration from original omitted). As noted above, New York courts will give administrative determinations preclusive effect if made in a quasi-judicial capacity and with a full and fair opportunity to litigate the issue. Ryan, 478 N.Y.S.2d at 825-27, 467 N.E.2d 487. These tests are met here. Section 3020-a clearly authorizes a hearing officer to adjudicate questions of fact, charges, and penalties. N.Y. Educ. Law § 3020-a(4). Burkybile's hearing properly adjudicated multiple charges of misconduct and determined that there was just cause for termination. Burkybile also had an adequate, full, and fair opportunity to litigate the question of cause for her termination. Section 3020-a lays out extensive litigation procedures for hearings, including motion practice, bills of particulars, mandatory disclosure, discovery, subpoena power, right to counsel, cross-examination, testimony under oath, and a full record. N.Y. Educ. Law § 3020-a(3)(c). This specific hearing occupied a total of fourteen days over a three-month period, and included the testimony of twenty witnesses, including five expert medical witnesses. The decision itself runs to over 150 pages and analyzes the evidence and arguments in extensive detail.
 
 
 21
 We have some concern over the hearing officer's use of an arbitral standard to judge the conflicting medical evidence that gave greater deference to the Board's experts than to Burkybile's. However, in this case, the hearing officer noted that such deference would be accorded only after Burkybile had failed to overcome the views of the Board's experts. In applying this standard, the hearing officer conducted a careful analysis of expert witness bias, credibility, credentials, and consistency. We conclude that because the hearing officer provided thorough and balanced reasoning in this case, the use of the inappropriate arbitral standard did not deny Burkybile an adequate, full, and fair opportunity to litigate. We therefore hold that the facts found at Burkybile's Section 3020-a hearing must be accorded preclusive effect.
 
 
 22
 II. Effect of Preclusion on the Retaliation Claim
 
 
 23
 We need not proceed any further to affirm the district court's order. Burkybile argues in her reply brief, but not her initial brief, that even if the findings of the hearing officer are given preclusive effect, those findings are not dispositive of her retaliation claim. Arguments raised for the first time in a reply brief are not properly before this Court, D'Alessio v. SEC, 380 F.3d 112, 120 n. 11 (2d Cir.2004), although we do have discretion to consider such arguments, Mitchell v. Fishbein, 377 F.3d 157, 165 (2d Cir.2004).[3]
 
 
 24
 Even if we were to consider this belated argument, we would hold that Burkybile's retaliation claim fails as a matter of law because the causal nexus between her accusations to the Board and the initiation of disciplinary proceedings is too attenuated. Under New York law, collateral estoppel bars the relitigation of "an issue clearly raised in a prior action or proceeding and decided against that party or those in privity." Ryan, 478 N.Y.S.2d at 826, 467 N.E.2d 487. Furthermore, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein." Id. The record does not reflect that any constitutional claims were raised at the Section 3020-a hearing, so we do not take these as decided. See Taylor v. Brentwood Union Free Sch. Dist., 908 F.Supp. 1165, 1178 (E.D.N.Y.1995). We do accept, based on the hearing officer's determinations, that Burkybile was terminated for just cause, was mentally disabled, and had demonstrated incompetence, insubordination, neglect, conduct unbecoming an administrator, and misconduct.
 
 
 25
 To state a prima facie claim of First Amendment retaliation under Section 1983, Burkybile must offer some tangible proof that 1) her speech was constitutionally protected; 2) she suffered an adverse employment action; and 3) a causal relationship between the two existed in that the speech was a substantial or motivating factor for the adverse employment action. Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999).
 
 
 26
 Burkybile can demonstrate the first two elements. First, speech that touches on a matter of public concern is constitutionally protected. Connick v. Myers, 461 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Public accusations of improper governmental actions are clearly matters of public concern, regardless of whether the accuser is motivated by personal reasons. Second, an adverse employment action is one that "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Washington v. County of Rockland, 373 F.3d 310, 320 (2d Cir.2004) (internal quotation omitted). The threat of a Section 3020-a hearing could have such a deterrent effect.[4] See id. A Section 3020-a hearing permits suspension with pay and carries with it the threat of possible termination. N.Y. Educ. Law § 3020-a(2)(b). In this case, the hearing also caused Burkybile to incur the expense and inconvenience of extensive litigation, including the preparation of at least two expert witnesses. Such consequences are clearly deterrents for even a person of ordinary firmness. See Washington, 373 F.3d at 320 (holding that the threat of an administrative disciplinary hearing created at least an issue of fact as to the existence of an adverse employment action).
 
 
 27
 However, Burkybile cannot demonstrate the causal nexus required to state a prima facie retaliation claim. Burkybile and appellees would no doubt disagree over whether the findings of the Section 3020-a hearing disprove this causal element. See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (providing that an employer may disprove causation by showing that it would have acted in the same way even in the absence of the protected speech). More to the point, the passage of time and the Board's actions defeat any showing of causation. This Court has not established a specific delay between protected activity and adverse employment action that defeats an inference of causation. Gorman-Bakos v. Cornell Co-op Extension, 252 F.3d 545, 554-55 (2d Cir.2001) (listing cases in the context of Title VII retaliation). We have in the past held that a delay of three months was fatal to a showing of causation, Hollander v. American Cyanamid Co., 895 F.2d 80, 85-86 (2d Cir.1990), and that a delay of eight months supported a showing of causation, Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir.1980). Here, more than a year passed between Burkybile's accusations before the Board and the initiation of disciplinary proceedings. Furthermore, the Board immediately appointed special counsel to investigate the accusations against Russell, and received a full investigative report. When appellees placed Burkybile on leave, they did so on a paid leave basis. They directed a series of medical examinations, as justified by the developing diagnoses, and permitted Burkybile's doctors to observe these examinations. Only after receiving the final medical report did appellees initiate disciplinary proceedings. All of these factors indicate good faith on the part of appellees and destroy any inference of retaliatory animus.
 
 
 28
 Burkybile has thus failed to make any showing that her speech was a substantial or motivating factor for the initiation of the disciplinary action against her. We therefore conclude that we would not find any issue of material fact as to Burkybile's retaliation claim, and would find that summary judgment was properly granted to appellees.
 
 CONCLUSION
 
 29
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Burkybile's initial complaint also alleged violations of the New York Whistleblower's Law, N.Y. Civ. Serv. Law § 75-b, and the federal Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355 (codified as amended at 29 U.S.C. §§ 701-796l). These claims have not been argued on appeal and we therefore do not address them
 
 
 [2]
 McDonald involved an arbitration award that had not been confirmed by a court. Appellees argue that McDonald is distinguishable on this basis alone. Again, this issue is more complex than the parties claim. We give the judicial Article 75 proceedings the same preclusive effect they would receive in New York courts. 28 U.S.C. § 1738. However, New York courts give even unreviewed arbitral findings preclusive effect. While this rule is not binding on federal courts under Section 1738, it does make it unclear what preclusive effect is accorded to the Article 75 proceeding itself. Compare Bottini v. Sadore Mgmt. Corp., 764 F.2d 116, 121 (2d Cir.1985) with Ritchie v. Landau, 475 F.2d 151, 155 (2d Cir.1973). Because of the limited scope of review under Article 75, it is arguable that only the reviewed issues of corruption, partiality, exceeding authority, or lack of a definite award are precluded by an Article 75 confirmation. Cf. Gargiul v. Tompkins, 704 F.2d 661, 666 (2d Cir.1983), vacated on other grounds, 465 U.S. 1016, 104 S.Ct. 1263, 79 L.Ed.2d 670 (1984) (giving preclusive effect to an Article 78 proceeding, which at the time permitted broader review of Section 3020-a hearings).
 
 
 [3]
 We also questioned,sua sponte, whether the preclusion of Burkybile's retaliation claim may divest both the district court and this court of jurisdiction under the Rooker-Feldman doctrine, and requested supplemental briefing on the issue. Since then, the Supreme Court has clarified that the Rooker-Feldman doctrine bars federal district court jurisdiction only over those actions filed by the loser in a state court action subsequent to the completion of that state court action seeking to overturn the judgment of the state court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., ___ U.S. ___, ___, 125 S.Ct. 1517, 1526, 161 L.Ed.2d 454 (2005). Here, Burkybile filed her federal action on March 15, 2002, well before any decision was rendered at any stage of Burkybile's state administrative or court proceedings. The Rooker-Feldman doctrine therefore has no application to this case, which is instead governed by the preclusion principles discussed in this opinion. See Exxon Mobil, 125 S.Ct. at 1527.
 
 
 [4]
 Burkybile also identifies her removal from her office, involuntary leave, and disparagement of her name and reputation as adverse employment actions. Notably, her eventual termination is not so identified, as Burkybile's complaint was filed well before the Section 3020-a hearing even began