RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0213p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

W.J. O'NEIL COMPANY,

                *Plaintiff-Appellant,*

    *v.*

SHEPLEY, BULFINCH, RICHARDSON & ABBOTT, INC.;
SMITH SECKMAN REID, INC.,

                *Defendants-Appellees.*

No. 13-2320

———————————

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:11-cv-12020—Robert H. Cleland, District Judge.

Argued: June 20, 2014

Decided and Filed: August 28, 2014

Before: COLE, Chief Judge; BOGGS and McKEAGUE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** David M. Zack, MCALPINE PC, Auburn Hills, Michigan, for Appellant. Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee Smith Seckman Reid. Michelle A Thomas, THOMAS, DEGROOD, WITENOFF, P.C., Southfield, Michigan, for Appellee Shepley, Bulfinch, Richardson. **ON BRIEF:** David M. Zack, MCALPINE PC, Auburn Hills, Michigan, for Appellant. Jeffrey C. Gerish, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellee Smith Seckman Reid. Michelle A Thomas, THOMAS, DEGROOD, WITENOFF, P.C., Southfield, Michigan, for Appellee Shepley, Bulfinch, Richardson.

      COLE, C.J., delivered the opinion of the court, in which BOGGS, J., joined. McKEAGUE, J. (pp. 13–14), delivered a separate dissenting opinion.

1

---

**OPINION**

---

COLE, Chief Judge.  After losing millions of dollars because of delays and coordination failures in building a hospital, W.J. O'Neil Company sued its construction manager in state court.  The two ended up in arbitration.  Shepley, Bulfinch, Richardson & Abbott, Inc., and Smith Seckman Reid, Inc., the defendants in this case, were added to the arbitration on indemnity claims.  In the arbitration, O'Neil did not formally assert claims against the instant defendants, but O'Neil's claims against its construction manager arose from the defendants' defective and inadequate design of the hospital.  O'Neil won the arbitration against its construction manager, but the construction manager did not establish its indemnity claims, so the defendants were not held liable.  No party sought judicial confirmation or review of the arbitration award.

O'Neil then sued the defendants in federal court.  The district court dismissed the claims, finding them barred by Michigan's doctrine of res judicata.  We find this conclusion in error.  An arbitration award cannot bar a claim that the arbitrator lacked authority to decide, and an arbitrator lacks authority to decide a claim that the parties did not agree to arbitrate.  Here, O'Neil did not agree to arbitrate the instant claims.  Accordingly, we reverse the district court's orders, vacate the judgment, and remand for further proceedings.

I.

The parties helped design and construct the Cardiovascular Center Hospital at the University of Michigan in Ann Arbor.  The University hired Shepley, Bulfinch, Richardson & Abbott, Inc., to serve as the project's architect.  Shepley Bulfinch, in turn, retained Smith Seckman Reid, Inc., to provide design services related to the mechanical, electrical, plumbing, and fire-protection systems of the new hospital.  Separately, the University hired Barton Malow Company to serve as the construction manager.  Barton Malow subcontracted W.J. O'Neil Company to serve as the mechanical contractor to supply and install plumbing, heating,

ventilation, and cooling systems. O'Neil did not have a contract with Shepley Bulfinch or Smith Seckman.

According to O'Neil, design errors and other failures caused it to incur substantial damages during the construction. To recover its damages, O'Neil sued Barton Malow, Shepley Bulfinch, and Smith Seckman in state court in Michigan. The court dismissed Barton Malow because its contract with O'Neil required the two to resolve their disputes by binding arbitration. The court initially stayed O'Neil's claims against Shepley Bulfinch and Smith Seckman, but it eventually entered a stipulated order dismissing the claims without prejudice in light of the arbitration.

O'Neil filed a demand for arbitration against Barton Malow, alleging breach, cardinal change, and abandonment of contract "arising from substantial design errors and mismanagement of the project by the owner and general contractor." O'Neil sought $19 million in damages. Barton Malow then filed its own demand for arbitration against the University, pursuant to their separate contract, seeking indemnity for the alleged design errors by the design team. The two arbitrations were consolidated over O'Neil's objection. The University filed a demand for indemnification against Shepley Bulfinch, which filed a demand for indemnification against Smith Seckman. Thus began a consolidated arbitration involving O'Neil, Barton Malow, the University, Shepley Bulfinch, and Smith Seckman.

The arbitration was quite large. O'Neil admits that discovery was "substantial." And by Smith Seckman's count, the hearing lasted 42 days over the course of 9 months, the parties introduced more than 1400 exhibits, and more than 50 witnesses testified. In the arbitration, O'Neil formally asserted claims only against Barton Malow, the construction manager, but O'Neil's claims implicated and were hostile to Shepley Bulfinch and Smith Seckman, the design team.

After hearing the evidence and the parties' arguments, the arbitrators issued an interim award in O'Neil's favor for $2.4 million. They found that O'Neil incurred damages "due to a change in the schedule caused by many factors, but largely due to the [hospital] plans being more difficult, time consuming, and expensive to coordinate . . . all of which constitutes a breach of O'Neil's contract [with Barton Malow]." (Interim Award of Arbitrators, R. 19-26, PageID

1133.) The arbitrators also found that Barton Malow failed to establish its indemnity claims against the University, noting that "the bulk of the claims that [Barton Malow] might have had against [the University] were all settled and released" by change orders Barton Malow had signed with the University. (*Id.* at 1134.) The arbitrators thus denied the indemnity claims flowing through the University to Shepley Bulfinch and Smith Seckman. A few months later, the arbitrators issued a final award, of which no party sought judicial confirmation or review.

O'Neil, a Michigan corporation, then filed this suit against Shepley Bulfinch and Smith Seckman, both non-Michigan corporations. O'Neil asserted claims for professional negligence, tortious interference, and innocent misrepresentation against both companies based on their design failures. Shepley Bulfinch and Smith Seckman jointly moved to dismiss on the pleadings under Federal Rule of Civil Procedure 12(c), and for summary judgment under Rule 56.

The district court granted the motion (under both rules), holding that Michigan's res judicata doctrine barred O'Neil's claims. The court declined to rule on three other arguments presented by the defendants for dismissal or summary judgment. O'Neil later filed a motion under Rule 59(e) to amend the district court's judgment, but the court denied the motion. O'Neil timely appealed both rulings.

II.

This court reviews de novo an order dismissing an action under Federal Rule of Civil Procedure 12(c), a grant of summary judgment, and a denial of a Rule 59(e) motion seeking review of a grant of summary judgment. *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010); *Santiago v. Ringle*, 734 F.3d 585, 589 (6th Cir. 2013); *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 776 (6th Cir. 2012). We also review de novo a district court's application of res judicata. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

The district court employed Michigan law to guide its res judicata analysis, but it was not required by statute to do so. True enough, the Full Faith and Credit Act requires federal courts to give state court "judicial proceedings" the same preclusive effect those proceedings would receive in courts of the same state. 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*, 456 U.S.

461, 466 (1982). But "[a]rbitration is not a 'judicial proceeding' and, therefore, § 1738 does not apply to arbitration awards." *McDonald v. City of W. Branch, Mich.*, 466 U.S. 284, 288 (1984). In other words, "federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award." *Id.*; *see also Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1178 (9th Cir. 1989) (explaining that the Supreme Court "has consistently held than an *unreviewed* arbitration decision does not preclude a federal court action"). Here, the record contains no indication that the arbitration award was confirmed or otherwise reviewed by a Michigan court, so the Full Faith and Credit Act does not require our court to consult Michigan preclusion law.

State law still might govern a federal court's determination of res judicata, however, when the federal court sits in diversity. The issue is underdeveloped and murky when it involves an unreviewed arbitration award. *See FleetBoston Fin. Corp. v. Alt*, 638 F.3d 70, 81 (1st Cir. 2011); *see also* 18B Wright, Miller, & Cooper, Federal Practice & Procedure § 4475.1 (2d ed. 2002) ("The source of the law that governs the preclusion consequences of an arbitration award has not been much developed."). A few courts have consulted state law to determine the preclusive effect of an unconfirmed arbitration award. *See, e.g., Jacobs v. CBS Broad., Inc.*, 291 F.3d 1173, 1176–77 (9th Cir. 2002). And, indeed, state law may control a case like this, where the federal case and the arbitration involve only state-law claims.

On the other hand, the parties agreed that the arbitration award could have been confirmed by a federal court in accordance with the Federal Arbitration Act. (*See* 9 U.S.C. § 9; Contract between Barton Malow and O'Neil § 23.2, PageID 378; Contract between the University and Barton Malow § O9.1.8, PageID 345.) If the arbitration had been confirmed by a federal court, we might apply federal preclusion law. *See, e.g., J.Z.G. Res., Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996) (holding that this court "shall apply federal res judicata principles in successive federal diversity actions"); *see also Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 528 (6th Cir. 2006) (same); *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009) (holding that federal common law governs the preclusive effect of a prior federal judgment in a subsequent diversity action). *But see Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001) (recognizing that "federal common law governs the

claim-preclusive effect of a dismissal by a federal court sitting in diversity," but adopting, as a matter of federal common law, the rule that federal courts should apply the preclusion law of the state courts in which the federal diversity court sits, unless the state law is incompatible with federal interests); *Q Int'l Courier Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006) (holding, under *Semtek*, that the preclusive effect of a federal court's diversity judgment is controlled by the law of the state in which the federal court sat).

We need not resolve whether a federal court sitting in diversity should look to federal or state law to determine the preclusive effect of an unreviewed arbitration award because Michigan preclusion law closely resembles its federal counterpart. *Compare Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) (under federal res judicata, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action"), *with Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (in Michigan, res judicata bars a successive action if "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first"). Moreover, the parties do not argue that applying federal preclusion law would make a difference here. Thus, while primarily relying on federal cases, we also find the following analysis applicable under Michigan law. *See Savers Prop. & Cas. Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburg, PA*, 748 F.3d 708, 716 (6th Cir. 2014).

## A.

Neither the Supreme Court nor our circuit has held that an unreviewed arbitration award bars the later litigation of a claim not subject to the arbitration. Nor are we aware of another circuit so holding. Indeed, "[c]onsiderable doubt exists as to whether, under federal law, arbitration proceedings can ever have a preclusive effect on the litigation of claims not subject to arbitration." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 463 n.8 (6th Cir. 1999); *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 222 (1985) ("[I]t is far from certain that arbitration proceedings will have any preclusive effect on the litigation of nonarbitrable federal claims."). The Supreme Court has held that federal courts should not accord res judicata effect to an unappealed arbitration award in a case brought under 42 U.S.C. § 1983. *McDonald*,

466 U.S. at 287–88. But the Court has not yet extended that holding to cases not brought under § 1983.

We find good reason not to accord res judicata effect to an unappealed arbitration award in a case where the claims sought to be precluded were not subject to the arbitration. An arbitrator's authority derives solely from, and is limited by, the contract between the parties. *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 263 (2009); *McDonald*, 466 U.S. at 290; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010) ("[A]n arbitrator derives his or her powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution."). An arbitrator therefore lacks authority to decide a claim the parties have not mutually agreed to arbitrate; such a claim is not subject to arbitration. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) ("[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration."). It makes little sense to allow an arbitration proceeding or award to preclude a claim the arbitrator had no authority to decide. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991) ("Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in those cases understandably was held not to preclude subsequent statutory actions." (referring to *Alexander v. Gardner-Denver Co.*, 415 U.S. 36 (1974), and its progeny)).

Moreover, adopting the defendants' approach would force a party, through the doctrine of res judicata, either to arbitrate a claim it had not agreed to arbitrate, or to effectively give up the claim. But arbitration is premised on a contract, and "[i]t goes without saying that a contract cannot bind a nonparty." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the [Federal Arbitration] Act is a matter of consent, not coercion."). Requiring arbitration of a claim the plaintiff had not agreed to arbitrate would, in effect, bind the plaintiff to a contract to which it never agreed. We think it unwise to apply res judicata in a way that subverts basic contract principles. Indeed, it is an "axiom" that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Techs.*, 475 U.S. at 648 (quoting *United Steelworkers of Am. v.*

*Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)) (quotation marks omitted). And it is clear that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010).

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983), is instructive. There, a construction company sought to recover from a hospital costs that were caused by delays in building an addition. *Id.* at 6. In response, the hospital sought declaratory relief in state court against the construction company. *Id.* at 7. The hospital also named the project's architect in the action, seeking indemnity from the architect for any liability the hospital might have to the construction company. *Id.* The hospital had an arbitration agreement with the construction company, but not with the architect. *Id.* at 4–5, 20. The construction company filed an action in federal court, seeking an order compelling arbitration, but the court stayed the construction company's suit and held that the state-court case should be resolved first. *Id.* at 7.

The Supreme Court found the stay improper. *Id.* at 4. The district court should have granted the motion to compel arbitration, the Court reasoned, in part because "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Id.* at 20, 29. Though the hospital's dispute with the construction company could be arbitrated, the Court specifically recognized that the hospital's dispute with the architect "cannot be sent to arbitration without the Architect's consent, since there is no arbitration agreement between the Hospital and the Architect. . . . [T]he Hospital's two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation." *Id.* at 19–20. In other words, even though two disputes had closely-related facts and one dispute would be arbitrated, the Court did not require the second dispute to be arbitrated in the absence of an arbitration agreement. *See id.*; *Frank's Nursery*, 177 F.3d at 461. Nor did the Court indicate that decisions in the arbitration of the first dispute would preclude any claims in litigation of the second. We think res judicata should operate similarly.

The Restatement of Judgments also supports our analysis. It notes that generally "a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the

same exceptions and qualifications, as a judgment of a court." Restatement (Second) of Judgments § 84(1) (1982). As the commentary explains, "[t]hese exceptions and qualifications are particularly pertinent in considering the preclusive effect of an arbitration award." *Id.* § 84, cmt. f. This is because "[a]n arbitration proceeding is much like an adjudication before a court of limited jurisdiction so far as the scope of its authority is concerned." *Id.* And limits to an arbitration agreement—for example, the absence of an agreement to arbitrate certain claims— should likewise limit the preclusive effect of an arbitration, "for the parties are under no obligation to submit themselves to arbitration with broader effects than may be agreed upon." *Id.* § 84, cmt. h. Thus, according to the Restatement, the rules of res judicata do not have diminished application to arbitration awards, but "the terms of these rules may more often result in denying preclusive effect to determinations reached in arbitration proceedings." *Id.* § 84, cmt. f. For the reasons discussed above, we think res judicata yields where the claims sought to be precluded were not subject to the arbitration. We thus conclude that an unreviewed arbitration award does not bar a later claim that the parties had not agreed to arbitrate.

B.

Nothing in the record indicates that the arbitration award in this case was appealed to or reviewed by a state or federal court. Therefore, the arbitration award will not bar the claims at issue if O'Neil had not previously agreed to arbitrate those claims. O'Neil's claims are for professional negligence, tortious interference, and innocent misrepresentation, and we find no evidence that O'Neil agreed to arbitrate any of these claims against the defendants.

The defendants concede that O'Neil did not contract with either of them, and thus it did not have an explicit agreement with Shepley Bulfinch or Smith Seckman to arbitrate these claims against them. Shepley Bulfinch, however, argues that O'Neil agreed to arbitrate its claims against the defendants in its contract with *Barton Malow*. In that contract, O'Neil agreed to allow Barton Malow to join O'Neil to any arbitration about the construction project to which Barton Malow is a party. (Contract between Barton Malow and O'Neil, § 23.3, R. 19-5, PageID 378.) O'Neil also agreed to be "bound by the procedures, decisions and determinations resulting from any dispute resolution process" in the contract between Barton Malow and the University. (*Id.*) The contract between Barton Malow and the University required arbitration of claims

between the University and any member of the construction team, including O'Neil, Shepley Bulfinch, and Smith Seckman. (Contract between the University and Barton Malow, §§ O1.1, O9.1, R. 19-3, PageID 340, 342.) That contract also specified that "[a]ny person may join any other person who participated in the Project to arbitration," so long as "such person or entity has consented to arbitration." (*Id.* § O9.1.6, PageID 344.) In addition, through separate agreements, both Shepley Bulfinch and Smith Seckman agreed to arbitrate claims against each other and claims against the University. (*See* Contract between the University and Shepley Bulfinch, § 14.1, R. 19-2, PageID 191; Contract between Shepley Bulfinch and Smith Seckman, § 3.8, R. 19-4, PageID 356.)

O'Neil's contract with Barton Malow does not require O'Neil to arbitrate its claims against Shepley Bulfinch and Smith Seckman. First, it is far from clear that the defendants are even permitted to enforce terms of a contract between O'Neil and Barton Malow, since the defendants are not parties to nor third-party beneficiaries of that contract. *See JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, --- F.3d ----, 2014 WL 2959107, at \*7–8 (6th Cir. July 2, 2014). More fundamentally, the contract's language does not support Shepley Bulfinch's argument. The contract appears to require O'Neil to consent to be joined to the consolidated arbitration and be bound by the "procedures, decisions and determinations" resulting from the arbitration. But even if the consolidated arbitration included O'Neil and the defendants, the contract does not require O'Neil to raise and arbitrate claims against the defendants or forever lose those claims. Indeed, Smith Seckman rightly concedes that it would not be forced to arbitrate O'Neil's claims. We agree.

It is not the case that O'Neil must arbitrate its claims against the defendants simply because O'Neil had an arbitration agreement with one company, that company had arbitration agreements with the defendants, and the disputes among the parties arose from the same circumstances. Such a scenario might provide grounds to force the parties to consolidate separate arbitrations, *see* Mich. Comp. Laws Ann. § 691.1690, but it is not grounds to conclude that O'Neil agreed to arbitrate its claims against the defendants. This contagion theory of arbitration has no basis in law or the relevant contracts.

Simply put: the premise of arbitration is consent and O'Neil did not consent to arbitrate the present claims. Our judicial doctrines do not force it to do so now.

C.

We would reach the same conclusion even if a Michigan court had reviewed the arbitration award. In that case, the state court's review would be a "judicial proceeding" entitled here to the same preclusive effect it would receive in state court. *See* 28 U.S.C. § 1738; *Ryan v. City of Shawnee*, 13 F.3d 345, 347 (10th Cir. 1993) ("[W]here the arbitration award was challenged and reviewed in a state court, as here, section 1738 requires that we ascertain and give the same effect to the state court judgment as the courts of [the same state] would give a state court decision affirming an arbitration award.").

But Michigan courts would not bar the present claims because of a judgment confirming or modifying the arbitration award. Among other requirements, Michigan's res judicata doctrine bars a successive action only if "the matter in the second case was, or could have been, resolved in the first." *Adair*, 680 N.W.2d at 396. In a state action appealing a statutory arbitration, "the court rules provide the court with three options: it may confirm, modify or correct, or vacate the award." *Gordon Sel-Way, Inc. v. Spence Bros., Inc.*, 475 N.W.2d 704, 709 (Mich. 1991) (citing Mich. Ct. R. 3.602).[1] Moreover, "[t]he court's power to modify, correct, or vacate an arbitration award . . . is very limited." *Id.* O'Neil, then, could not have asserted its tort claims in a state-court proceeding reviewing the arbitration; those claims could not have been resolved in that action. This limitation would defeat the defendants' res judicata defense.

Our reasoning fits squarely within courts' understanding of the preclusive effect of limited state-court proceedings, such as reviews of arbitration awards. As the Supreme Court has instructed, "claim preclusion generally does not apply where 'the plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy because of the limitations on the subject

---

[1]In 2012, the Michigan Legislature enacted a uniform arbitration act that repealed the state's previous arbitration regime. *See* Uniform Arbitration Act, 2012 Mich. Pub. Act No. 371 (codified at Mich. Comp. Laws §§ 691.1681–.1713); *Savers*, 748 F.3d at 721 n.1. The Act, however, applies only to arbitration proceedings commenced after July 31, 2013. Mich. Comp. Laws § 691.1713. Nevertheless, our analysis would not change under the new law. *See* Mich. Comp. Laws §§ 691.1702, .1703 (providing that a court may confirm, modify or correct, or vacate an arbitration award).

matter jurisdiction of the courts.'" *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 382 (1985) (quoting Restatement (Second) of Judgments § 26(1)(c) (1982)) (brackets omitted); *see also Burkybile v. Bd. of Educ. of Hastings-on-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 311 n.2 (2d Cir. 2005) ("Because of the limited scope of review under [New York state law] Article 75, it is arguable that only the reviewed issues of corruption, partiality, exceeding authority, or lack of a definite award are precluded by an Article 75 confirmation."); *Fayer v. Town of Middlebury*, 258 F.3d 117, 124–25 (2d Cir. 2001) (finding that Connecticut courts would not give preclusive effect to a state court's confirmation judgment so as to bar the plaintiff from litigating a federal constitutional claim not raised in the arbitration); *Ryan*, 13 F.3d at 348 (holding that an Oklahoma state court's confirmation of an arbitration could not preclude the plaintiff's claim because the confirmation proceeding did not allow the reviewing court to "consider factual or legal findings or the merits of the arbitration award," thus depriving the plaintiff of the opportunity to litigate his claim).

## III.

For these reasons, the district court's orders are reversed, the judgment is vacated, and the case is remanded for further proceedings.  In addition, Shepley Bulfinch's motion for sanctions against O'Neil lacks merit and is denied.

————————————

**DISSENT**

————————————

McKEAGUE, J, dissenting.   I respectfully dissent.   Claim preclusion "bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involved the same parties or their privies, and (3) the matter in the second case was, or could have been resolved in the first." *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004).   All of these requirements are easily satisfied here under Michigan's "broad approach" to res judicata. *Id.*

The present case involves the same parties that actively and extensively participated in the consolidated arbitration.   While O'Neil did not formally bring a claim against Shepley Bulfinch or Smith Seckman, there can be no doubt that the parties had a "controversy among themselves" and were actively hostile to each other. *See York v. Wayne County Sheriff*, 403 N.W.2d 152, 157 (Mich. Ct. App. 1987).   Likewise, there can be no question that the "matter in the second case was, or could have been, resolved in the first." *Adair*, 680 N.W.2d at 396.   All of the parties in the present action were parties in the arbitration and the facts underlying both cases are identical and obviously "related in time, space, origin, and motivation." *Id.* at 398 (internal citation omitted).

The majority focuses its attention on the fact that arbitration is premised on the parties' agreement to submit their dispute to private dispute resolution, but such consent is not lacking here.   O'Neil initiated the arbitration that eventually expanded to include Shepley Bulfinch and Smith Seckman.   Moreover, in his contract with Barton Mallow, O'Neil agreed to arbitrate his grievances with Barton Mallow and further agreed in a standard "flow-through" provision to be "bound by the procedures, decision and determinations resulting from any dispute resolution process" in the contract between Barton Malow and the University.   The contract between Barton Malow and the University required *all* disputes, among *all* contractors, to be submitted to binding arbitration.   This court does not need to infect O'Neil with a "contagion theory of arbitration" to bar his claims with res judicata.   It merely needs to hold him to the basic terms of his contract.   Any infection that O'Neil has acquired is its own doing.

The parties in the present case have already spent substantial time and money litigating the exact issues raised in this case. The previous arbitration lasted almost a year and generated 10,000 pages of transcripts, over 1,400 exhibits, and testimony from 50 witnesses. Now, the parties must begin again. Nothing prevented O'Neil from bringing his tort claims in the initial arbitration, and it is apparent that O'Neil has simply repurposed his arbitration claims to take a second bite at the apple. As I believe O'Neil's claims are barred by res judicata under Michigan law, I respectfully dissent.