Joan MAZUR, Plaintiff,

v.

**NEW YORK CITY DEPARTMENT OF EDUCATION, and Regina Dominguez, Defendants.**

No. 12 Civ. 0687(AT).

United States District Court,
S.D. New York.

Signed Sept. 16, 2014.

Steven Anthony Morelli, The Law Office of Steven A. Morelli, Paul Andrew Bartels,

Law Office of Louis D. Stober, Jr., LLC, Garden City, NY, for Plaintiff.

Amy Jacobson Kessler, Ricardo Tapia, Jr., NYC Law Department, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

ANALISA TORRES, District Judge:

In 2003, Plaintiff, Joan Mazur, a 49-year-old teacher, began working at Grover Cleveland High School in Queens, New York. In 2008, she injured her ankle and was absent from school for six weeks. Plaintiff claims that after her injury, her supervisor, Assistant Principal Regina Dominguez, began to treat her unfairly by giving Plaintiff unjustified, negative reviews and burdening her with extra work. The New York City Department of Education ("DOE") referred administrative charges against Plaintiff in 2010 and 2012. Hearings were held in both instances, and Plaintiff was twice disciplined. Plaintiff alleges that Defendants, Dominguez and the DOE, discriminated against her on the basis of her age and disability and created a hostile work environment in violation of 42 U.S.C. § 1983, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), New York State Executive Law § 290 ("NYSHRL"), and Title 8 of the New York City Administrative Code ("NYCHRL"). Plaintiff also alleges that Defendants retaliated against her for filing discrimination complaints. Because Defendants have shown that a reasonable jury could not find that Plaintiff was discriminated against, Defendants' motion for summary judgment is GRANTED.

### BACKGROUND

**I.** *Plaintiff's Prior Employment at the Department of Education*

Plaintiff began working for the DOE as a substitute teacher in 1988. Pl. 56.1 Counter–Statement of Material Facts ("Pl. 56.1") ¶ 2. She stopped working for the DOE in 1994 but continued to work in other educational settings for the next decade. Pl. 56.1 ¶ 3. Plaintiff began working for the DOE again in 2003 at Grover Cleveland High School as a Spanish teacher and an English as a Second Language ("ESL") teacher. Pl. 56.1 ¶ 4. She briefly taught at Far Rockaway High School from 2004 to 2005 and then returned to teach at Grover Cleveland for the 2005–2006 school year up through the 2011–2012 school year. Pl. 56.1 ¶¶ 6–7. Plaintiff received tenure in 2006. Pl. 56.1 ¶ 10.

**II.** *2003–2007 School Years*

When Plaintiff began at Grover Cleveland, she was supervised and reviewed by Assistant Principal Ana Zambrano–Burakov. Pl. 56.1 ¶ 5. In a December 8, 2003 classroom observation, Zambrano–Burakov rated Plaintiff's lesson as satisfactory and offered several recommendations for improvement, including writing more detailed lesson plans and asking Plaintiff to share copies of the plans with Zambrano–Burakov for her review. Pl. Ex. E, at 313. For Plaintiff's 2003–2004 annual professional performance review, Plaintiff received a satisfactory rating. The 2003–2004 review also noted nine absences. Pl. Ex. E, at D000098. At the time, Dominick Scarola was the Principal of Grover Cleveland and signed off on Plaintiff's annual performance reviews. Pl. 56.1 ¶ 15. Beginning in 2005, Assistant Principal Regina Dominguez became Plaintiff's supervisor. Dominguez is three years older than Plaintiff. Pl. 56.1 ¶ 8, 14. In a December 6, 2006 classroom observation, Dominguez rated Plaintiff's lesson as satisfactory. Pl. Ex. E, at 309. As part of her recommendations for improvement, Dominguez suggested that Plaintiff collect and review

homework and have students correct the grammar in their work before reading it. In her 2005–2006 annual performance review, Plaintiff received a satisfactory rating, and the review noted ten absences. Pl. Ex. E, at D000097. In another classroom observation conducted on March 20, 2007, Plaintiff received a satisfactory rating from Dominguez. Suggestions for this lesson included having a tardy log out and visible, adhering to class rituals and procedures, and managing lesson time better. Pl. Ex. E, at 307. Plaintiff received a satisfactory rating for her 2006–2007 annual performance review, and the review noted six absences. Pl. Ex. E, at D000096.

### III. 2008–2009 School Year

In February 2008, Plaintiff sprained her ankle and did not return to Grover Cleveland for approximately six weeks until April 8 or April 9. Pl. Ex. D ("Mazur Dep.") 31:12–14, 34:7–13. Plaintiff was unable to drive and required assistance walking during the six-week period. Mazur Dep. 33:15–24. While Plaintiff was out, she exchanged "[a] few telephone calls and a few emails" with Dominguez in which Dominguez asked about when Plaintiff might return, potential substitutes for Plaintiff's class, and other things. Mazur Dep. 35:10–23.

In her deposition, Plaintiff described Dominguez's tone on the telephone as "very annoyed, very irritated, [and] very angry." Mazur Dep. 36:11. When asked whether there was anything discriminatory or any mention of her age in the email exchanges between Plaintiff and Dominguez, Plaintiff said that there was nothing discriminatory but that Plaintiff was being very accommodating because most teachers on sick leave did not offer to assist while out. Mazur Dep. 40:25–41:22. Plaintiff said the usual approach to leave was "I'm home sick and that's the end of it

and you'll see me when I get back." Mazur Dep. 41:10–12. When Plaintiff returned to Grover Cleveland, her relationship with Dominguez was "still cordial." Mazur Dep. 42:15–18.

Dominguez conducted a classroom observation of Plaintiff in June 2008 and gave her a "minimally satisfactory" rating. Def. Ex. M. The observation made several recommendations, including making grammar corrections first before reading assignments and managing lesson time better. Plaintiff's annual performance review, dated June 28, 2008 and covering the 2007–2008 school year, rated Plaintiff as satisfactory and indicated thirty absences. Def. Ex. N.

On December 18, 2008, Dominguez conducted a classroom observation of Plaintiff and rated her lesson as unsatisfactory. Def. Ex. O. The report stated that the lesson was wanting "because there were major problems due to your failure to implement a well planned lesson" and the lesson was "sketchy" and "incomplete." Def. Ex. O. The report listed several areas where Plaintiff's performance had been deficient, including her failure to collect homework, failure to adhere to rituals, and failure to manage lesson time appropriately. Although Plaintiff disagreed with the criticisms and recommendations in the observation, Plaintiff did not believe that her unsatisfactory rating in December 2008 was connected to her age but rather to her ankle injury. Mazur Dep. 60:4–7.

As a result of the unsatisfactory observation, Dominguez requested that Plaintiff provide her with her weekly lesson plans in order to allow Dominguez to review and assist Plaintiff in her planning techniques. Def. Ex. O. In a "Log of Assistance," dated March 4, 2009, Dominguez offered to meet with Plaintiff regarding her course instruction and suggested that Plaintiff observe two other ESL teachers, Ms. Mosquea and

Ms. Rozos. Def. Ex. P. Plaintiff observed the two other ESL teachers, who were both younger than Plaintiff, and noted in her deposition that the ESL teachers were more skilled in using classroom technology and that this was a "very good thing." Mazur Dep. 64:11–66:18. Plaintiff ultimately received a satisfactory rating in her 2008–2009 annual performance review and report, and the review noted fifteen absences. Def. Ex. Q.

## IV. *2009–2010 School Year*

During the 2009–2010 school year, Dominguez conducted classroom observations on October 22, 2009, March 11, 2010 and March 18, 2010, and she rated Plaintiff's lessons as satisfactory on these occasions. Def. Exs. R, S, T. Some of the recommendations for improvement included better lesson structure and time management. *See, e.g.,* Def. Ex. S. At Plaintiff's deposition, Plaintiff agreed with the October rating and did not believe that there was anything discriminatory about the October observation. Mazur Dep. 74:6–11. Although Plaintiff believed that Dominguez wanted to give her an unsatisfactory rating, she said that Dominguez "wanted to work on one teacher at a time" and had already planned to give another teacher an unsatisfactory rating. Mazur Dep. 75:1–19. Plaintiff conceded that the other teacher who ultimately received an unsatisfactory rating was fifteen years younger than Plaintiff, and Plaintiff did not believe her October satisfactory rating was connected to her 2008 ankle injury. Mazur Dep. 76:6–12. Similarly, although Plaintiff believed that the March satisfactory ratings were subjective, Plaintiff did not think that the March observation rating was connected to her age or her ankle injury. Mazur Dep. 79:1–19; 80:1–3.

By letter dated April 29, 2010, Assistant Principal Thadia Louis admonished Plaintiff for her excessive tardiness and absenteeism. Def. Ex. U. The letter stated that Louis, Plaintiff, and Plaintiff's union representative Brian Gavin had met on October 22, 2009 and on April 28, 2010 to discuss the absences and that continued infractions would result in an unsatisfactory rating and/or termination.

In her 2009–2010 annual performance review, Plaintiff received an overall rating of unsatisfactory due to unsatisfactory "[a]ttendance and punctuality." Def. Ex. V. The review indicated that Plaintiff had been absent more than thirteen days. Plaintiff did not understand why she was rated unsatisfactory, as she had received satisfactory ratings throughout the year and she had not received an unsatisfactory rating in previous years despite having more absences and unsatisfactory observations. Mazur Dep. 81:10–82:7. Plaintiff appealed the unsatisfactory rating, but it was upheld. Mazur Dep. 87:23–90:5.

## V. *The First Disciplinary Hearing*

As a result of Plaintiff's tardiness and absenteeism, the DOE brought administrative charges against Plaintiff in September 2010. Mazur Dep. 90:6–11. Pursuant to New York Education Law 3020–a and Plaintiff's union contract, Plaintiff participated in a disciplinary hearing for tenured teachers (a "3020–a hearing") in October 2010 that was presided over by impartial hearing officer Arthur A. Riegel. Def. Ex. W; Mazur Dep. 90:17–22. Plaintiff was represented by counsel and had the opportunity to present evidence and question witnesses. At the hearing, the DOE provided a record of Plaintiff's tardiness and absences and argued that such behavior undermined the students' education and burdened the school's administrators, teachers and budget. Def. Ex. W, at D000057. Plaintiff admitted that the tardiness was her own fault and due to traffic

in her commute, but she argued that it minimally impacted her students because other teachers covered for her. Regarding her absences, Plaintiff did not deny that she was often absent but argued that it resulted from "various health issues, ranging from common colds, and viruses she has caught from students to minor surgery." Def. Ex. W, at D000058.

On November 5, 2010, the hearing officer found that Plaintiff had been excessively tardy and absent in the 2008–2009 and 2009–2010 school years and fined her $2,500, Def. Ex. W, at D0000610. Regarding the 2008–2009 school year, he found that although Plaintiff had submitted medical documentation to account for some of the absences, "none of the medical notes submitted give reason as to why [Plaintiff] is unable to go to work. The medical notes are vague and insubstantial, often indicating that the teacher has a 'medical problem' and otherwise simply positing that she has come into the office to see the doctor." Def. Ex. W, at D000059. The hearing officer also found that Plaintiff failed to notify the school in a timely manner and that her attitude toward attendance reflected a poor understanding of her role and influence on students. Def. Ex. W, at D000059. Regarding the 2009–2010 school year, the hearing officer similarly found that the medical notes were "insubstantial" and that Plaintiff's absences occurred in a suspect pattern on Mondays, Fridays, or near extended weekends or holidays, thereby undermining her credibility. Def. Ex. W, at D000060. The hearing officer concluded that "[g]iven the fact that the teacher does not suffer from a chronic ailment or serious medical condition, coupled with the number and suspicious nature of her absences, [Plaintiff's] defense is rendered null." Def. Ex. W.

## VI. *2010–2011 School Year*

On September 30, 2010, Dominguez and two other assistant principals observed Plaintiff's lesson. Plaintiff received an unsatisfactory rating. Def. Ex. X. The observation noted a failure to correct or address previous recommendations, including a lack of classroom rituals and a failure to make corrections first or review homework. As a result, Dominguez required Plaintiff to provide certain materials such as weekly ESL lesson plans, corrected exams, grade books and parent outreach logs for her review. In a February 17, 2011 letter following up on a recent meeting between Plaintiff and Dominguez, Dominguez provided a list of recommendations that she had made to Plaintiff, including observing three other teachers. Def. Ex. Y. On March 11, 2011, Dominguez sent another letter to Plaintiff stating that Dominguez had not received any of the materials requested in the February 17, 2011 letter and requesting that they be delivered immediately. Def. Ex. Z.

On March 25, 2011, Plaintiff attended a meeting with Dominguez, Gavin and Celia Foster, an assistant principal. According to a March 26, 2011 letter memorializing the meeting, the parties discussed Plaintiff's ongoing obligation to provide Dominguez with the materials requested in the October observation. Def. Ex. AA. After Plaintiff failed to provide a copy of her lesson plan for the week of April 4, Dominguez sent her another letter on April 5, 2011 reminding Plaintiff of their recent discussions and Plaintiff's obligations. Def. Ex. BB.

Dominguez conducted a classroom observation on May 20, 2011 and rated Plaintiff's lesson as satisfactory. Def. Ex. CC. Recommendations from the observation included having students make grammar corrections first and incorporating more diverse instructional methods. However, Plaintiff received an unsatisfactory rating

during her annual performance review for the 2010–2011 school year. Def. Ex. EE. The review indicated that Plaintiff had been deficient in areas including attendance and punctuality, control of class, planning, and attention to routine. Def. Ex. EE. The review also noted eleven days of absences.

## VII. *2011–2012 School Year*

For the 2011–2012 school year, Grover Cleveland was designated as a failing school in need of improvement. As a result, the school was required to implement a new evaluation system categorizing lessons as "effective" or "ineffective." Def. Ex. C, at 5, 49–50.

Throughout the 2011–2012 school, Plaintiff worked with Maria Rozos, a "Master Teacher" who was selected to assist and train other teachers in need of assistance. Def. Ex. RR; Mazur Dep. 63:25–64:10. Plaintiff indicated at her deposition that the teachers she observed made similar errors to the ones noted in her observation reports. Mazur Dep. 66:16–67:4. For example, Plaintiff stated that while she was criticized for allowing students to work independently instead of in pairs, she observed Rozos allowing students to work independently as well. Mazur Dep. 69:18–70:9.

On September 27, 2011, Dominguez conducted an observation along with Mary Brouder, a "talent coach" brought in to Grover Cleveland to aid in implementing a new observation system and assist the failing school. Def. Ex. C, at 24; Def. Ex. FF. Plaintiffs lesson was rated ineffective. Def. Ex. FF. The report indicated that Plaintiff lacked commitment as evidenced by the lack of a well-defined lesson plan and recommended that Plaintiff better implement classroom rituals and procedures. On December 7, 2011, Dominguez and Brouder again observed Plaintiff's lesson

and again rated it ineffective. Def. Ex. GG.

On January 4, 2012, Dominguez met with Plaintiff, Gavin and Principal Denise Vittor, who had replaced Scarola, and discussed Plaintiff's pre-observation requirements and Plaintiff's continuing obligation to provide Dominguez with lesson plans. Def. Ex. JJ.

Plaintiff filed a lawsuit in Supreme Court, New York County on January 12, 2012, alleging discrimination on the basis of age and disability. Plaintiff also filed a Charge of Discrimination with the New York State Division of Human Rights on March 15, 2012. Def. Ex. UU.

On March 22, 2012, Plaintiff met with Assistant Principal Gregory Ambrosini and Gavin. At the meeting, Plaintiff's tardiness/absence record of 15.2 days was discussed, and Plaintiff was reminded that she could face additional disciplinary action if it continued. Def. Ex. KK.

On May 30, 2012, Vittor conducted an observation of Plaintiff's lesson and rated it unsatisfactory. Def. Ex. NN. The observation noted that none of the recommendations from the January 4, 2012 meeting had been implemented.

On June 1, 2012, Ambrosini again met with Plaintiff and discussed the issue of her excessive tardiness and absences. That day, in a follow-up letter to Plaintiff, Ambrosini listed the dates on which Plaintiff had been late or absent and warned that continued tardiness and absences would result in additional disciplinary measures. Def. Ex. MM. The letter also noted that Plaintiff had offered to summarize the circumstances surrounding the absences. Plaintiff received an unsatisfactory rating for her 2011–2012 annual performance review. Def. Ex. QQ. The review indicated that Plaintiff performed unsatisfactorily in a number of areas such

as attendance and punctuality, professional attitude and growth, planning and skill, and attention to records and routine matters. The review also stated that Plaintiff had been absent approximately twenty days during the school year.

## VIII. *The Second Disciplinary Hearing*

On June 19, 2012, the DOE suspended Plaintiff with pay and referred eight administrative charges against her. Def. Ex. SS. At the end of 2012 and the beginning of 2013, Plaintiff, who was represented by the same counsel as in this litigation, and the DOE participated in a 3020–a hearing on these charges. Def. Ex. C. Impartial hearing officer Haydee Rosario presided over the ten-day hearing in which both parties presented evidence and questioned witnesses. At the hearing, Vittor, Dominguez, Ambrosini, payroll secretary Maria Avengo and Rozos testified on behalf of the DOE while Plaintiff, Zambrano–Burakov, Gavin and Marilene Duarte testified on behalf of Plaintiff.

Dominguez testified that she was frustrated by Plaintiff's lack of interest in her professional development and that Plaintiff "took no real initiative and did not implement most of the recommendations given to her." Def. Ex. C, at 32–33. Rozos testified about the assistance she had provided to Plaintiff and stated that although she regularly met with Plaintiff, Plaintiff "did not incorporate any of her suggestions and noted [Plaintiff] conducted her lesson with[out] the lesson plan without incorporating any of [Rozos'] suggestions." Def. Ex. C, at 35.

In her defense, Plaintiff argued at the hearing that Dominguez was overzealous, that the DOE was subjective and arbitrary in reviewing and disciplining her, and that she was required to start submitting lesson plans after her ankle injury in 2008 and this requirement was burdensome and

discriminatory. Plaintiff also maintained that experienced teachers did not need a detailed lesson plan. Plaintiff's union representative testified at the hearing that teachers were required to formulate a lesson plan on a daily basis and that supervisors could request them if a teacher had been rated unsatisfactory. Def. Ex. C, at 15. He also noted that complaints had been raised about Dominguez overworking teachers but that no other teachers complained about the request for lesson plans. Def. Ex. C, at 16.

On October 2, 2013, Rosario issued an opinion and award finding that the administrative charges were sustained and that the DOE had cause to discipline Plaintiff. Rosario credited the testimony and explanations of the DOE witnesses, and particularly the testimony of Rozos, who Rosario found to be genuinely interested in aiding Plaintiff and not involved in the evaluations or the outcome of the hearing. Def. Ex. C, at 53. Rosario also noted that former principal Scarola had recommended specific improvements to Plaintiff's lesson plans as early as 2003, which demonstrated that criticisms of Plaintiff's lessons did not begin only after her ankle injury. Regarding Plaintiff's discrimination defenses, Rosario did not find them credible because there was no evidence suggesting that Dominguez had harbored a grudge for several years after Plaintiff's injury and because the deficiencies in Plaintiff's teaching had been documented and confirmed by multiple sources. Def. Ex. C, at 54–55. Rosario stated, "it is clear from a review of this record that [Plaintiff] essentially admits the underlying conduct ... even though she denies any wrongdoing and challenges her unsatisfactory observation ratings." Def. Ex. C, at 56. In determining the appropriate penalty, Rosario noted Plaintiff's inability to understand the impact of her tardiness

and absences must be addressed. Rosario concluded that Plaintiff's unwillingness to change her teaching was "rooted in [Plaintiff's] honest belief that after twenty plus years of teaching she knows what she is doing and that her teaching is beyond reproach simply because she is an experienced teacher. The undisputed record evidence clearly demonstrates that this is not the case." Def. Ex. C, at 58–59.

As a result of her findings, Rosario suspended Plaintiff without pay from November 1, 2013 through June 30, 2014 and required Plaintiff to attend at least twenty four hours of professional development courses.

## DISCUSSION

### I. Standard of Review

Summary judgment may be granted only if the court concludes that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir.2004). A dispute is genuine when there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which may affect the outcome of a case. *Id.*

The moving party initially bears the burden of informing the court of the absence of a genuine dispute of material fact by citing to particulars in the record. Fed. R.Civ.P. 56(c); *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548; *Koch v. Town of Brattleboro*, 287 F.3d 162, 165 (2d Cir.2002). The movant may satisfy its burden by "showing that the materials cited do not establish the absence or presence of a genuine dis-

pute." Fed.R.Civ.P. 56(c)(1)(B). If the non-moving party has the burden of proof on specific issues, the movant may also satisfy its own initial burden by demonstrating that the adverse party cannot produce admissible evidence to support an issue of fact. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548; *PepsiCo Inc. v. Coca–Cola Co.*, 315 F.3d 101, 105 (2d Cir.2002). In deciding the motion, the court views the record in the light most favorable to the non-moving party. *O'Hara v. Weeks Marine, Inc.*, 294 F.3d 55, 61 (2d Cir.2002).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of fact. *Beard v. Banks*, 548 U.S. 521, 529, 126 S.Ct. 2572, 165 L.Ed.2d 697 (2006); *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir.2001). The opposing party may not avoid summary judgment by relying solely on conclusory allegations or denials that are unsupported by factual data. *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp.*, 302 F.3d 83, 91 (2d Cir.2002). Instead, the opposing party must set forth "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (internal quotation marks omitted).

### II. Collateral Estoppel of Federal Claims

Prior to evaluating whether Defendants have met their burden in demonstrating that there is no genuine dispute as to a material fact, the Court must first address whether Plaintiff's claims are barred by the doctrine of collateral estoppel. Defendants argue that Plaintiff is collaterally estopped from bringing her § 1983, NYSHRL and NYCHRL age and disability discrimination and hostile work environment claims because she had a chance to fully and fairly litigate the issues during the second 3020–a hearing.

Collateral estoppel applies when "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *United States v. Hussein,* 178 F.3d 125, 129 (2d Cir.1999) (quoting *In re PCH Assocs.,* 949 F.2d 585, 593 (2d Cir.1991)). In the case of unreviewed findings of state administrative tribunals, the Supreme Court has held that when a "state agency 'acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *University of Tennessee v. Elliott,* 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (internal alterations and citations omitted). However, in the same decision, the Supreme Court held that Title VII claims were not precluded because Title VII explicitly states that the Equal Employment Opportunity Commission ("EEOC") should give "substantial weight" to state agency orders and findings. *Id.* at 795, 106 S.Ct. 3220. Thus, the Court reasoned, to give complete preclusive effect to state findings for Title VII cases would render this guidance from Congress superfluous. More recently, the Second Circuit has clarified that a 3020–a hearing is an administrative adjudication and as such, "we must give its findings preclusive effect." *Burkybile v. Bd. of Educ. of Hastings–On–Hudson Union Free Sch. Dist.,* 411 F.3d 306, 311 (2d Cir.2005).

In this case, the unreviewed findings of Plaintiff's 3020–a hearing should be given complete preclusive effect against her § 1983, NYSHRL and NYCHRL age

and disability discrimination and hostile work environment claims. First, the issues raised in the 3020–a proceeding and this action are identical. Plaintiff complains in this action that she began receiving negative evaluations after her injury in 2008 and that the evaluations, the subsequent administrative charges and the suspension all resulted from discrimination based on her age and disability. Those same complaints of discrimination were raised as defenses in her 3020–a hearing. *See, .e.g.,* Def. Ex. C, at 36, 41, 54, 55. Second, the issues in the prior proceeding were actually litigated, and Plaintiff had a full and fair opportunity to litigate them. Plaintiff participated in a ten-day hearing in which she was represented by the same counsel as in this action. Def. Ex. C, at 2. She had the opportunity to question the same witnesses and review the same evidence at the 3020–a hearing that form the core of this litigation. *See* Pl. 56.1 ¶¶ 99–103; Def. Ex. C, at 2, 6, 7, 15 (indicating that Vittor, Dominguez and Gavin testified and that "[t]he parties were afforded a full and fair hearing, including the opportunity to present evidence, examine and cross-examine witnesses and make arguments in support of their respective positions"). Plaintiff, citing *Locurto v. Giuliani,* 447 F.3d 159 (2d Cir.2006), contends that she was *per se* denied a full and fair opportunity to litigate her age and disability claims because the 3020–a hearing took place prior to discovery in this case. However, *Locurto* does not stand for that proposition. Rather, the *Locurto* court held that the plaintiffs were denied a fair opportunity to litigate because the potentially biased arbitrators in the administrative hearing unfairly denied the plaintiffs adequate discovery. *Id.* at 171. Here, Plaintiff does not point to any deficiencies in the discovery in connection with the 3020–a hearing, and tellingly, Plaintiff does not provide any additional evidence in her moving papers

that post-dates the 3020–a hearing or demonstrates that the discovery in the 3020–a hearing was somehow deficient.

Finally, Plaintiff's claims of age and disability discrimination were necessarily decided in the 3020–a hearing in order to support a final judgment because they were her central defenses. The hearing officer addressed Plaintiff's claims of discrimination and determined that they were without merit. Def. Ex. C, at 54–55; Pl. Ex. B, at 1064–65 (taking judicial notice of "a federal complaint in court relating to the same allegations" and stating that "we understand that this [federal complaint] is for a different case, but it's part of the defense—the underlying claim of discrimination and disparate treatment is part of this case, so to that extent, I will take judicial notice"). Other courts in this Circuit, pursuant to *Burkybile,* have given preclusive effect to 3020–a proceedings. *See Smith v. New York City Dep't of Educ.,* 808 F.Supp.2d 569, 581–83 (S.D.N.Y.2011) (holding that plaintiff's § 1983, ADEA and ADA age and disability discrimination and hostile work environment claims were barred by the doctrine of collateral estoppel after two 3020–a hearings); *see also Mohammed v. New York City Dep't of Educ.,* 932 F.Supp.2d 420, 428 (E.D.N.Y.2013) (finding that reviewed findings of 3020–a hearing precluded § 1983, NYSHRL and NYCHRL claims); *Page v. Liberty Cent. Sch. Dist.,* 679 F.Supp.2d 448, 453 (S.D.N.Y.2010) (holding that ADA claims were barred by collateral estoppel due to specific 3020–a findings that the plaintiff could perform essential functions of her job). Accordingly, Plaintiff's § 1983, NYSHRL and NYCHRL age and disability discrimination and hostile work environment claims are barred by collateral estoppel because they were fairly and fully litigated in her 3020–a hearing. However, Defendants concede that because the ADEA and ADA claims are similar to Title VII claims in that they must first be referred to the EEOC or its state equivalent and because Plaintiff's 3020–a hearing findings are unreviewed, Plaintiff's ADEA and ADA claims are not precluded in accordance with *University of Tennessee v. Elliott. See* Letter from Ricardo Tapia (August 18, 2014), ECF No. 61.

### III. *Age and Disability Discrimination Claims Under the ADEA and ADA*

Although Plaintiff's ADEA and ADA claims are not precluded, Defendants have nonetheless proffered sufficient evidence to demonstrate that there is no genuine dispute as to a material fact regarding Plaintiff's ADEA and ADA discrimination and hostile work environment claims.

At the summary judgment phase, although the court is required to draw all inferences in the non-moving party's favor, the non-moving party must still point to evidence that demonstrates the existence of a genuine dispute. *See D'Amico v. City of New York,* 132 F.3d 145, 149 (2d Cir. 1998) ("The non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful."). In Plaintiff's motion papers and in her 56.1 statement, she relies on either allegations found in the complaint or testimony from her deposition. In such situations, the Second Circuit has explained that "[w]hile it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on [her] own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether the jury could reasonably find for the plaintiff and thus whether there are any 'genuine' issues of

material fact, without making some assessment of the plaintiff's account." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir.2005) (internal citations and quotation marks omitted); *see also Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 105 (2d Cir.2011) (stating that the district court was entitled to assess the plaintiff's factual assertions when the plaintiff had only submitted an affidavit and her deposition testimony in opposition to the summary judgment motion whereas the defendant submitted contemporaneous letters and meeting notes that contradicted the plaintiff's assertions); *accord Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 22 (2d Cir.2014) (stating that summary judgment in *Jeffreys* and *Rojas* was appropriate when the plaintiffs' cases relied entirely on their own testimony and the plaintiffs had made statements that were inconsistent and contradicted by evidence in the record).

Here, the Court finds that Plaintiff fails to meet her burden with respect to her ADEA and ADA causes of action. As in her 3020-a hearing, Plaintiff has not offered evidence demonstrating the existence of a genuine dispute over the facts but rather contests what conclusions should be drawn from the agreed-upon series of events at issue. The overwhelming evidence, however, would not allow a reasonable jury to conclude that she was discriminated against on the basis of her age or disability or endured a hostile work environment in violation of the ADEA or ADA.

### A. Age Discrimination Under the ADEA

#### 1. ADEA Discrimination Claims

 ADEA discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106

(2d Cir.2010). In order to establish a *prima facie* case of age discrimination in violation of the ADEA, a plaintiff must show: (1) she was within the protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination. *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir.2009). If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 498–99 (internal quotation marks omitted). If the defendant can articulate such a reason, the burden then shifts back to the plaintiff to "demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 499 (internal quotation marks omitted). Unlike in Title VII cases, if a defendant provides a "legitimate, non-discriminatory reason" for the employment action, a plaintiff cannot merely show that age was a contributing factor to the adverse employment action to prevail; rather, she must show that age was the "but-for" cause. *Gorzynski*, 596 F.3d at 106 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 178, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009)). Importantly, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir.2010) (quoting *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

 Plaintiff's ADEA claim fails at multiple points in the *McDonnell Douglas* inquiry. First, Plaintiff has not made out a *prima facie* case of age discrimination be-

cause she has failed to show that the circumstances surrounding her adverse employment actions give rise to an inference of discrimination. Plaintiff has not adduced evidence suggesting that her age and the adverse employment actions are connected, and the evidence that she has put forward does not reasonably lead to an inference of discrimination. In Plaintiff's deposition, she repeatedly stated that she did not believe many of the lesson observation ratings were affected by her age. *See, e.g.,* Mazur Dep. 60:4–7 ("Q. Do you believe assistant principal Dominguez gave you this unsatisfactory rating because of your age? A. Not this particular rating. I think this was connected to my ankle and not my age."); Mazur Dep. 79:1–5 ("Q. Do you think anything in this evaluation had anything to do with your age? A. I don't believe any of this had to do with my age, but I believe it's discriminatory. It's discriminatory in the observation itself."). Although Plaintiff stated that school administrators had been asking older teachers about when they were going to retire, Plaintiff conceded that she was never asked about retirement. Mazur Dep. 59:5–6. Plaintiff also conceded that younger teachers had received unsatisfactory ratings, *see* Pl. 56.1 ¶¶ 83–85, and that older teachers had received satisfactory ratings, *see* Pl. 56.1 ¶¶ 86–89, further undermining an inference of discrimination. *See Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 82 (2d Cir.2001) ("Nor has [the plaintiff] shown that similarly situated employees were treated differently or that she was replaced by a younger person, or adduced any other circumstantial evidence indicative of discriminatory intent."). It is also undisputed that the alleged discriminator, Dominguez, was three years older than Plaintiff, a fact that undercuts a discriminatory inference. Pl. 56.1 ¶ 14; *see Tucker v. New York City,* 05 Civ. 2804, 2008 WL 4450271, at *5 (S.D.N.Y. Sept. 30, 2008) ("Moreover, any inference of race discrimination is further undermined by the fact that all three superintendents under whom [the plaintiff] worked as well as three of his four direct supervisors at the DOE were also African–American."), *aff'd,* 376 Fed.Appx. 100 (2d Cir.2010).

The Second Circuit's decision in *Leibowitz v. Cornell University* highlights the weaknesses in Plaintiff's evidence of age discrimination. 584 F.3d 487. In *Leibowitz,* the plaintiff demonstrated that the defendant university had laid off five other employees who were women over the age of fifty, had reassigned teaching duties previously performed by the plaintiff to three other male instructors, and had not considered the plaintiff for vacant positions and yet tried to fill one of these positions with a younger male employee. *Id.* at 502. In this case, Plaintiff has provided no evidence aside from her own (often inconsistent) testimony that age was a factor in her reviews or suspension.

Any inference of discrimination is further undermined by the findings of the two 3020–a hearings. As explained by the Second Circuit in *Collins v. New York City Transit Authority,*

> a decision by an independent tribunal that is not itself subject to a claim of bias will attenuate a plaintiff's proof of the requisite causal link. Where, as here, that decision follows an evidentiary hearing and is based on substantial evidence, the Title VII plaintiff, to survive a motion for summary judgment, must present strong evidence that the decision was wrong as a matter of fact—*e.g.* new evidence not before the tribunal—or that the impartiality of the proceeding was somehow compromised.

305 F.3d 113, 119 (2d Cir.2002). Although Plaintiff is correct that her ADEA and ADA claims are not collaterally estopped by the 3020–a hearing, the fact that a

neutral hearing officer rendered a decision based on substantial evidence that found just cause to discipline Plaintiff and found her defenses of age and disability discrimination to be without merit is nonetheless "highly probative of the absence of discriminatory intent." *Id.* Plaintiff has not shown that the hearing officers were biased or that certain evidence was unavailable or overlooked, thus undermining the inference that her suspension was connected to her protected status. *See Hodge v. Columbia Univ. in City of New York*, 05 Civ. 7622, 2008 WL 2686684, at *17–18 (S.D.N.Y. July 2, 2008) (finding that the plaintiff did not satisfy the elements of an ADEA or Title VII claim after extensive hearings and an arbitrator's opinion "concluded that [the plaintiff's supervisor] did not comment about [the plaintiff's] age, that there were legitimate reasons for the two brief suspensions, and that [the plaintiff] was not subjected to 'harassment' even in the plain ordinary meaning of that word.").

 In addition, Plaintiff cannot show that her age was the "but-for" cause of her adverse employment actions. Defendants have articulated several legitimate, nondiscriminatory reasons for the adverse actions taken against Plaintiff by providing a series of negative classroom observation reports indicating that Plaintiff failed to rectify her unsatisfactory performance throughout her employment at Grover Cleveland and evidence of Plaintiff's excessive tardiness and absences. The record indicates that Plaintiff received specific recommendations for improvement as early as 2003 that remained unaddressed years later. *Compare* Pl. Ex. E (December 8, 2003 classroom observation recommending that Plaintiff prepare more detailed lesson plans and asking Plaintiff to share the plans with Zambrano–Burakov), *with* Def. Ex. X (September 30, 2010 classroom observation recommending that

Plaintiff prepare more detailed lesson plans and asking Plaintiff to share the plans with Dominguez). In addition, Plaintiff has offered no explanation for her tardiness. Plaintiff does not contest the amount of absences but rather contends that the absences were excusable and not excessive. Mazur Dep. 92:10–15. Given the detailed history of Plaintiff's transgressions and Plaintiff's lack of evidence aside from conclusory and contradictory statements, no reasonable jury could conclude that Plaintiff's age was the "but-for" cause of her reviews, charges and suspension. *Cf. Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F.Supp.2d 230, 248 (E.D.N.Y. 2010) ("When an employer accused of discrimination provides convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory allegations such as these, it is proper for a court to conclude that there is no genuine issue of material fact...."). Plaintiff's ADEA discrimination claims, therefore, must be dismissed.

### 2. ADEA Hostile Work Environment Claims

 "An actionable discrimination claim based on hostile work environment under the ADEA is one for which the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir.2007) (internal alterations and quotation marks omitted) (citing *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir.1999)). A determination of hostility involves an objective component, which asks whether a reasonable person would find the environment to be hostile, and a subjective component, which asks whether the plaintiff perceived the environment to be hostile. *Id.* A plaintiff

does not need to list specific acts but must prove that the alleged incidents were "sufficiently continuous and concerted to be considered pervasive" and resulted from her age. *Id.* at 240–41.

■ As with her other age-based discrimination claims, Plaintiff has proffered insufficient evidence to make out a hostile work environment claim. *See Sotomayor v. City of New York,* 862 F.Supp.2d 226, 261 (E.D.N.Y.2012) (dismissing a plaintiff's age-based hostile work environment claims on the same grounds as her age discrimination claims), *aff'd,* 713 F.3d 163 (2d Cir. 2013). Objectively, Plaintiff has not demonstrated that she endured a workplace "permeated with discriminatory intimidation, ridicule, and insult" based on her age that altered her working conditions. In her deposition, Plaintiff acknowledged that she had never been personally asked about retirement. *See* Mazur Dep. 59:5–6. Moreover, comments or questions about retirement, without more, do not create a hostile work environment. *See Hamilton v. Mount Sinai Hosp.,* 528 F.Supp.2d 431, 447 (S.D.N.Y.2007) ("[D]iscussion of retirement is common in offices, even between supervisors and employees, and is typically unrelated to age discrimination."), *aff'd,* 331 Fed.Appx. 874 (2d Cir.2009). Plaintiff also fails to demonstrate how her negative evaluations or reviews were connected to her age. To the contrary, Plaintiff's own testimony shows that she did not feel that many of the negative reviews were connected to her age. *See* Mazur Dep. 60:4–7, 79:1–5, 81:10–12. Similarly, although Plaintiff states in her 56.1 statement that she was forced to observe younger teachers as part of a "targeted campaign of harassment," Plaintiff acknowledged in her deposition that the teachers she observed were "very clear and concise," "well prepared," and had a command of technology that Plaintiff admired. *Compare* Pl. 56.1

¶¶ 47–48, *with* Mazur Dep. 64:2–3, 66:3–8. Far from suggesting that the recommended observations were discriminatory, Plaintiff's testimony indicates that the observations of other teachers were informative. Plaintiff takes issue with the fact that some of the younger teachers committed similar infractions, but nowhere in the record does Plaintiff show that these teachers did not receive similar recommendations or that they faced no penalties for their mistakes. With such contradictory and inconsistent evidence, a reasonable jury could not conclude that Plaintiff had been subjected to a hostile work environment based on her age.

B. Disability Discrimination Under the ADA

1. ADA Discrimination Claims

■ Claims of disability discrimination brought under the ADA are evaluated under the Title VII *McDonnell Douglas* burden-shifting framework. *McBride v. BIC Consumer Products Mfg. Co., Inc.,* 583 F.3d 92, 96 (2d Cir.2009). In order to establish a *prima facie* case of disability discrimination, a plaintiff must show: (1) that her employer is subject to the ADA; (2) that she has a disability—actual or perceived by her employer—as defined by the ADA; (3) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (4) she suffered an adverse employment action as a result of her disability. *Brady v. Wal–Mart Stores, Inc.,* 531 F.3d 127, 134 (2d Cir.2008).

■ Plaintiff fails to establish a *prima facie* case at the second, third and fourth prongs of the analysis and fails to rebut Defendants' legitimate non-discriminatory reasons for the adverse actions. First, Plaintiff has not shown that she is disabled as defined by the ADA. Plaintiff did not attend class for six weeks in the spring of

2008 after she sprained her ankle. *See* Pl. 56.1 ¶¶ 20–21. During that time, Plaintiff was unable to drive. Mazur Dep. 33:15–19. She was in a wheelchair for the first week and a half until she was able to walk, although slowly and with a crutch. Mazur Dep. 33:20–24. After six weeks, Plaintiff was able to return to work and used a cane to walk for some time. Mazur Dep. 34:1–13. Plaintiff stated that the ankle injury was not permanent and, aside from lingering weakness, has not caused any permanent changes in her major life activities. Mazur Dep. 34:14–24. Temporary injuries that do not substantially affect one's ability to engage in major life activities do not constitute a "disability" within the meaning of the ADA. *See Price v. City of New York*, 09 Civ. 4183, 2013 WL 1182073, at *7 (E.D.N.Y. Mar. 21, 2013) ("Courts in this Circuit repeatedly have held that the inability to, *e.g.*, walk long distances or climb stairs does not in itself substantially limit an individual's ability to perform a major life activity."), *aff'd*, 558 Fed.Appx. 119 (2d Cir.2014); *Young v. Benjamin Dev. Co., Inc.*, 03 Civ. 10209, 2009 WL 498933, at *8 (S.D.N.Y. Feb. 17, 2009) ("In fact, the record suggests that, before, during, and after, the September 19 fall, Plaintiff was assigned the same types of tasks that he had been given since he started working for Allerton in 1990. Accordingly, Plaintiff has not produced sufficient evidence that Defendants regarded him as 'disabled' under the ADA."), *aff'd*, 395 Fed.Appx. 721 (2d Cir.2010); *Le Prevost v. New York*, 03 Civ. 2544, 2006 WL 2819582, at *7 (S.D.N.Y. Sept. 29, 2006) ("Based on the record, it is clear to the Court that Plaintiff's injury, while it affected the major life activity of walking, did not *substantially* affect her ability to walk. The record shows that Plaintiff's impairment was not particularly severe, was not expected to, and indeed, did not, last very long, and appears to have had no permanent impact on Plaintiff's ability to walk."). Because Plaintiff's injury was only temporary and did not substantially affect her ability to walk, Plaintiff has not shown that she was disabled.

▇▇ Second, Plaintiff has not shown that she was otherwise qualified to perform the essential functions of the job with reasonable accommodation. To the contrary, the record reflects that Plaintiff did not seek an accommodation. Plaintiff testified that although she assisted Dominguez in a limited capacity while out, the approach to sick leave was "[b]asically it's I'm home sick and that's the end of it and you'll see me when I get back." Mazur Dep. 41:5–19. There is no evidence that Plaintiff either asked for an accommodation or that she was denied an accommodation. *Cf. McBride*, 583 F.3d at 97 (affirming summary judgment against an employee who "failed to present any evidence of an accommodation that would have allowed her to perform the essential functions of her pre-disability position").

Even if Plaintiff's ankle injury did constitute a disability, Plaintiff has not shown that an inference of discrimination can be drawn from her injury and her reviews, charges and suspension. As discussed above in the context of the ADEA claims, the findings of the 3020–a hearings undermine an inference of discriminatory intent. At her first 3020–a hearing following her absences during the 2008–2010 school years, Plaintiff was admonished for her failure to provide sufficient medical documentation for her injuries and appointments. *See* Def. Ex. W. Plaintiff has not provided "strong evidence" showing that those 3020–a findings were biased or that did not account for previously unavailable evidence. *Collins*, 305 F.3d at 119. Even in this litigation, Plaintiff has not demonstrated that Defendants or the hearing

officer unfairly disregarded legitimate medical needs.

Finally, Plaintiff is unable to rebut Defendant's legitimate, non-discriminatory reasons for the adverse actions. Plaintiff repeatedly failed to implement the recommendations given to her and failed to properly account for her absences. Plaintiff's ankle injury occurred in February 2008 and had no permanent effects on Plaintiff's ability to walk. Yet, Plaintiff's pattern of tardiness and absenteeism continued well into 2012 for reasons unrelated to her ankle. *See, e.g.,* Mazur Dep. 93:14–94:2; Def. Ex, MM, Accordingly, Plaintiff cannot show that the reasons for her disciplinary action are pretext and, therefore, her ADA discrimination claims are dismissed.

### 2. ADA Hostile Work Environment Claims

Although the Second Circuit has not addressed whether the ADA permits hostile work environment claims, courts have nonetheless evaluated ADA hostile work environment claims under the same standard as Title VII claims. *See Farina v. Branford Bd. of Educ.,* 458 Fed.Appx. 13, 17 (2d Cir.2011) (summary order); *De La Rosa v. City of New York Police Dep't,* 09 Civ. 5290, 2010 WL 4177626, at *7 (S.D.N.Y. Oct. 22, 2010), *aff'd,* 461 Fed. Appx. 73 (2d Cir.2012). "The standard, however, is a demanding one, and a plaintiff must establish that the alleged harassment was offensive, pervasive, and continuous enough to create an abusive working environment." *Monterroso v. Sullivan & Cromwell, LLP,* 591 F.Supp.2d 567, 584–85 (S.D.N.Y.2008) (internal quotation marks omitted).

As with her ADEA hostile work environment claims, Plaintiff does not provide any evidence showing that she was harassed based on her disability in a way that was severe or pervasive enough to alter her working conditions. During her six-week ankle injury absence, Plaintiff and Dominguez only exchanged "[a] few telephone calls and a few emails" in which Dominguez sounded irritated and angry but did not otherwise make any discriminatory remarks. Mazur Dep. 35:10–23, 36:10–15. These isolated—even if heated—exchanges between Plaintiff and Dominguez during her absence are insufficient to support a hostile work environment claim. *Wesley–Dickson v. Warwick Valley Cent. Sch. Dist.,* 973 F.Supp.2d 386, 407 (S.D.N.Y.2013) (holding that a supervisor's two comments asking about the plaintiff's chemotherapy and noting that another colleague on chemotherapy had memory troubles did not create a hostile work environment in violation of the ADA). Upon Plaintiff's return from leave, Plaintiff stated that her relationship with Dominguez was "cordial, but it wasn't what it had been before." Mazur Dep. 51:17–21. Plaintiff does not allege that Dominguez made any additional remarks about Plaintiff's ankle injury after her return. The shift in the tenor of their relationship is also insufficiently hostile to sustain a claim. Moreover, Plaintiff's contention that she was unfairly disciplined for her absences after her ankle injury is without merit, as Plaintiff concedes that she was absent for additional, non-ankle related reasons, and her ankle injury cannot explain the absences in the later school years. *See* Mazur Dep. 93:5–94:2 ("Honestly I don't remember the number, but 33 were for the ankle and I know 14 were for other things like fever and my tonsils."); Def. Ex. VIM (letter indicating that Plaintiff was absent at least 20 days in the 2011–2012 school year); *cf. Alfano v. Costello,* 294 F.3d 365, 377 (2d Cir.2002) ("Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore

important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination."). Plaintiff's ADA hostile work environment claims are, therefore, dismissed.

## IV. *Retaliation Claims*

Defendants argue that Plaintiff's retaliation claims are similarly precluded by the 3020–a hearings because the hearing officer found no improper motive in Defendants' reviews or supervision of Plaintiff. However, without a clear discussion and acknowledgement from the hearing officer that the issue was considered and adjudicated in the 3020–a hearing, the Court declines to find that the retaliation claims are precluded. Nonetheless, Defendants have shown that there is no genuine dispute as to a material fact regarding all of Plaintiff's retaliation claims.

### A. Retaliation in Violation of the First Amendment and Equal Protection Clause

■■■■ To state a *prima facie* case of relation, the plaintiff must show that (1) she engaged in a protected activity, (2) the employer knew about this activity, (3) the plaintiff suffered a "materially adverse action," and (4) there is a causal connection between the protected activity and the adverse action. *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir.2012). Regarding the causal connection, the Supreme Court has recently held that it is not enough for a defendant's adverse employment action to be based in part on the plaintiff engaging in a protected activity; instead, "retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Univ. of Texas S.W. Med. Ctr. v. Nassar*, —— U.S. ——, 133 S.Ct. 2517,

2528, 186 L.Ed.2d 503 (2013). In the case of First Amendment retaliation, a plaintiff must show that: "(1) [her] speech addressed a matter of public concern, (2) [she] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 382 (2d Cir.2003).

■■■■ First, with respect to Plaintiff's First Amendment retaliation claims, Defendants argue that Plaintiff cannot show that her complaints addressed a public concern. "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide, taking into account the content, form, and context of a given statement as revealed by the whole record." *Ruotolo v. City of New York*, 514 F.3d 184, 189 (2d Cir.2008). If a lawsuit "concerns essentially personal grievances and the relief [a plaintiff] seeks is for [herself] alone, [then] the lawsuit is not speech on a matter of public concern and cannot sustain a First Amendment retaliation claim." *Id.* at 190; *see also Adams v. New York State Educ. Dep't*, 08 Civ. 5996, 2010 WL 624020, at *28 (S.D.N.Y. Feb. 23, 2010) (collecting cases), *report and recommendation adopted in part*, 705 F.Supp.2d 298 (S.D.N.Y.2010). After evaluating the record, the Court finds that Plaintiff's complaints against Defendants involved personal grievances about her workload, reviews, discipline and suspension, and they were made in her capacity as a teacher, not a citizen. None of her complaints addressed matters beyond the scope of her own employment. Because a complaint concerning personal grievances about one's employment does not constitute speech of public concern, it cannot sustain a First Amendment retaliation claim.

■ Second, with respect to Plaintiff's claim of retaliation in violation of the Equal Protection Clause, courts have differed as to whether such claims are cognizable. *See Giscombe v. New York City Dep't of Educ.,* 12 Civ. 464, 39 F.Supp.3d 396, 405–06, 2014 WL 3974582, at *8 (S.D.N.Y. Aug. 12, 2014) (noting the discrepancy in Second Circuit case law regarding the viability of Equal Protection retaliation claims). Assuming the availability of this claim, the Court nonetheless finds that Plaintiff has failed to make out a *prima facie* case. Plaintiff has not shown that she was treated differently from any other employees as a result of these complaints. Plaintiff filed her civil lawsuit in January 2012 and filed her discrimination complaint with the New York State Division of Human Rights on March 15, 2012. However, the alleged adverse actions against Plaintiff began well before the filing of these complaints, and Plaintiff has not pointed to any other disparate treatment or adverse actions that can be reasonably connected to her filings. *See Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 95 (2d Cir.2001) ("Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise.")

### B. Retaliation in Violation of the ADEA and ADA

■ Claims for retaliation under the ADEA and ADA are evaluated under the Title VII *McDonnell Douglas* burden-shifting framework. *See Widomski v. State Univ. of New York (SUNY) at Orange,* 748 F.3d 471, 476 (2d Cir.2014) (ADA claims); *Gorzynski,* 596 F.3d at 110 (2d Cir.2010) (ADEA claims). Although Plaintiff meets the first three requirements of her *prima facie* case, she fails to show that there is a causal connection between her complaints of age and disability discrimination and her suspension. Turning again to the Second Circuit's guidance in *Collins v. New York City Transit Authority,* an independent tribunal's findings, although not *per se* preclusive, can negate the causal link between Plaintiff's protected activity and the resulting adverse action. 305 F.3d at 119. Plaintiff's suspension occurred after she participated in two 3020–a hearings presided over by neutral hearing officers who reviewed the evidence and found just cause to discipline her. In order to show a causal connection and survive summary judgment, Plaintiff must present strong evidence that the decision was incorrect because either new evidence was discovered or because the hearing officers were unfairly biased. *Id.* Plaintiff has not done so. Aside from general, conclusory claims that the hearing officers disregarded her allegations and credited Defendants' testimony, Plaintiff has not shown that either of the 3020–a hearings was deficient. Because Plaintiff cannot show that the 3020–a hearing decision was incorrect as a matter of fact, her claim that her charges and suspension were based on her discrimination complaints is without merit. *See Mohammed,* 932 F.Supp.2d at 430 (granting summary judgment on retaliation claims when the plaintiff could not show that 3020–a hearing was biased or flawed); *Roemer v. Bd. of Educ. of City Sch., Dist. of City of New York,* 290 F.Supp.2d 329, 332–34 (E.D.N.Y.2003) (holding that retaliation claim was barred based in part on 3020–a hearing findings even though retaliation was not mentioned by the arbitrator), *aff'd,* 150 Fed.Appx. 38 (2d Cir.2005)

### C. Retaliation in Violation of the NYSHRL and NYCHRL

Plaintiff also alleges retaliation in violation of the NYSHRL and the NYCHRL.

"Hostile work environment and retaliation claims under the NYSHRL are generally governed by the same standards as federal claims under Title VII." *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir.2006). Accordingly, for the same reasons that Plaintiff's federal retaliation claims are dismissed, Plaintiff's NYSHRL retaliation claims are also dismissed.

■■■ Regarding the NYCHRL claims, the Second Circuit requires district courts to separately analyze them and construe their provisions more liberally than the federal or state law-based claims. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir.2013). However, "the NYCHRL is not a general civility code, and a defendant is not liable if the plaintiff fails to prove the conduct is caused at least in part by discriminatory or retaliatory motives or if the defendant proves the conduct was nothing more than 'petty slights or trivial inconveniences.'" *Id.* at 113 (internal citation omitted). Even under the more liberal standard of the NYCHRL, Plaintiff has not shown that she was retaliated against for her discrimination complaints. Defendants have provided extensive documentary evidence showing that the conduct that gave rise to the administrative charges against Plaintiff occurred well before she filed her complaints in 2012. A documented pattern of poor performance that precedes the filing of a discrimination complaint can sever the causal link between the protected activity and the alleged retaliatory act. *See Farrugia v. North Shore Univ. Hosp.*, 13 Misc.3d 740, 820 N.Y.S.2d 718, 728 (N.Y.Sup.Ct.2006) (holding that the plaintiff was not terminated as a result of his harassment complaints based in part on documents indicating that the plaintiff's performance was in need of improvement and the plaintiff had received warnings prior to the filing of his complaints).

Moreover, Plaintiff does not refute that she was absent and that she declined to make the necessary changes to her teaching methods, thus failing to show that the reasons for her charges and suspension were a pretext for discrimination. *See* Mazur Dep. 46:21–24, 92:10–18; *see also Chin v. New York City Hous. Auth.*, 106 A.D.3d 443, 444, 965 N.Y.S.2d 42 (1st Dep't 2013) (holding that the plaintiff failed to show that the reasons provided for her transfer to a field office were pretextual). Accordingly, Plaintiff's NYCHRL retaliation claims are dismissed. *See, e.g., Jeffrey v. Montefiore Med. Ctr.*, 11 Civ. 6400, 2013 WL 5434635, at *24 (S.D.N.Y. Sept. 27, 2013) (broadly construing provisions of NYCHRL and reaching the same conclusions as with the federal and NYSHRL claims).

## V. *Claims Against the DOE and Dominguez*

■■■ Plaintiff alleges that the DOE is liable pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). However, "*Monell* does not provide a separate cause of action ... it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir.2006). "Establishing the liability of the municipality requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir.2013). Because Plaintiff fails to establish that an underlying constitutional violation occurred, the DOE cannot be held liable under *Monell. See Faber v. Monticello Cent. Sch. Dist.*,

10 Civ. 01812, 2013 WL 2450057, at *6 (S.D.N.Y. June 6, 2013) ("[B]ecause the Court finds as a matter of law that Plaintiff's Fourth Amendment rights were not violated, no *Monell* claim can lie against the School District or the Board pursuant to § 1983.").

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. The Clerk of Court is directed to close the motion at ECF No. 40 and to close the case.

SO ORDERED.